IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAI DWAYNE INGRAM,                    :
                                      :
            Plaintiff,                :         CIVIL NO. 3:08-CV-0023
                                      :
      v.                              :         Hon. John E. Jones III
                                      :
SCI CAMP HILL, *et al.*,              :
                                      :
            Defendants.               :

## MEMORANDUM

December 1 , 2010

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

This *pro se* civil rights action was initiated by Plaintiff Kai Dwayne Ingram
("Plaintiff" or "Ingram"), an inmate presently confined at the State Correctional
Institution Forest ("SCI Forest") in Marienville, Pennsylvania.

Presently before the Court are a Motion for Summary Judgment filed on behalf
of remaining Defendants (Doc. 62) and a Motion for Leave to File an Amended
Complaint (Doc. 72) filed by Plaintiff.  For the reasons set forth herein, the Motion for
Summary Judgment will be granted, and the Motion for Leave to File an Amended
Complaint will be denied.

**PROCEDURAL BACKGROUND**

Plaintiff initiated this action on January 4, 2008 by filing a Complaint under the provisions of 42 U.S.C. § 1983 in which he raises claims stemming from events that occurred in August 2007 while he was incarcerated at the State Correctional Institution Camp Hill ("SCI Camp Hill") in Camp Hill, Pennsylvania. (*See* Doc. 1.) On March 4, 2008, he filed an Amended Complaint on which this case is proceeding. (Doc. 9.) The Defendants remaining in this action all were employed at SCI Camp Hill at the time of filing of the Amended Complaint. These Defendants, and their job titles at the relevant time, are Greg Chiles, Lieutenant; Chris Chambers, Unit Manager for the Restricted Housing Unit ("RHU") and Grievance Officer; Ian Taggart, Facility Grievance Coordinator; Reginald Brown, Correctional Officer; and Teresa Law, Medical Administrator.

In a Report and Recommendation dated April 4, 2008, Magistrate Judge J. Andrew Smyser recommended that the claims asserted by Plaintiff in his Amended Complaint against Defendants Moslak, SCI Camp Hill, and the State Correctional Institution Greene ("SCI Greene") be dismissed, and that Plaintiff's Eighth Amendment claim concerning a denial of hygiene products also be dismissed. (Doc. 10.) By Order dated May 29, 2008, the Honorable Thomas I. Vanaskie, to whom this

case then was assigned, adopted the Report and Recommendation of Judge Smyser. (Doc. 16.)

The following claims asserted by in Plaintiff in his Amended Complaint remain: **(1)** Defendant Brown issued Plaintiff two institutional misconduct charges on August 16, 2007 out of retaliation following Plaintiff's statement that he was going to file a grievance; **(2)** Defendants Chiles, Chambers, and Taggart denied Plaintiff's right of access to the courts by failing to take action when he informed them that he was unjustly being denied the ability to communicate with the courts; and **(3)** Defendant Law was deliberately indifferent to Plaintiff's serious medical needs because she "did nothing" after he submitted a grievance to her explaining that he was being forced to take medication that he did not want or need, and he was continuously forced to take the medication after his transfer on September 19, 2007 to the State Correctional Institution Greene ("SCI Greene"). (*See* Doc. 9.)

Defendants filed an Answer to the Amended Complaint on May 20, 2008. (Doc. 14.) Pursuant to a case management order issued on May 29, 2008, discovery closed on November 28, 2008, and dispositive motions were due on or before January 30, 2009. (Doc. 17.) On January 30, 2009, a motion for summary judgment was filed on behalf of Defendants arguing that they were entitled to judgment as a matter of law

because Plaintiff failed to fully exhaust his administrative remedies as to his

remaining claims. (Doc. 22.) In a Report and Recommendation dated April 17, 2009,

Magistrate Judge Smyser concluded that Defendants had not met their burden of

establishing Plaintiff's failure to exhaust administrative remedies and therefore

recommended that the motion be denied. (Doc. 30.) Specifically, the Report and

Recommendation observed that, as to Plaintiff's claim concerning the allegedly

retaliatory misconducts issued by Defendant Brown, Plaintiff had presented evidence

that DC-ADM 804, the Pennsylvania Department of Corrections ("DOC") policy

providing procedures for the review of inmate grievances, was inapplicable. (*See id.*

at 10.) This evidence consisted of a copy of Plaintiff's grievance regarding the

allegedly retaliatory misconduct charges that he had submitted pursuant to the

procedures provided by DC-ADM 804, and a copy of the response to the grievance

indicating that the grievance was rejected because Plaintiff should pursue the issue

under DC-ADM 801, the DOC policy providing procedures for the review of inmate

misconduct appeals. (*See id.* (citing Doc. 28, Pltf. Exs., at 1, 8).) The Report and

Recommendation concluded that, because Defendant Brown did not contend or

present evidence to establish that Plaintiff had failed to exhaust his administrative

remedies under DC-ADM 801, Brown was not entitled to summary judgment as to

Plaintiff's retaliation claim against him.  (*See id.*)

The Report and Recommendation also concluded that, although DC-ADM 804 was applicable to Plaintiff's Eighth Amendment claim against Defendant Law concerning her alleged failure to act after she was informed that Plaintiff was being forced to take medication, Law had failed to establish that Plaintiff failed to exhaust available administrative remedies as to that claim.  (*See id.* at 11.)  The conclusion was based on Plaintiff's contention that he had not received a response to the grievance he submitted to Defendant Law about this claim, and thus was unable to appeal further in order to exhaust his administrative remedies.  (*See id.*)  Because Law had not submitted any evidence that Plaintiff received a response, the Court concluded that she failed to establish that Plaintiff failed to exhaust his administrative remedies as to his claim against her.  (*See id.* at 11-12.)

Similarly, the Report and Recommendation concluded that, although DC-ADM 804 was applicable to Plaintiff's claims against Defendants Chiles, Chambers, and Taggart, Plaintiff again contended that he did not receive a response to his August 27, 2007 grievance concerning his access to the courts claim against them, and because these defendants did not present evidence that Plaintiff received a response, they failed to establish that Plaintiff failed to exhaust his administrative remedies as to his

access to the courts claim.  (*See id.* at 12-14.)  Based on his conclusions, Magistrate

Judge Smyser recommended that Defendants' motion for summary judgment be

denied and the case listed for trial.  (*See id.* at 14.)  The parties did not file any

objections, and by Order dated July 30, 2009, Judge Vanaskie adopted the Report and

Recommendation of Magistrate Judge Smyser.  (Doc. 33.)

Thereafter, on August 14, 2009, Judge Vanaskie conducted a telephonic

scheduling conference during which Plaintiff indicated that he had mailed a motion to

appoint counsel to the Court.  Several days later, on August 17, 2009, Plaintiff's

motion to appoint counsel was docketed.  (Doc. 35.)  By Order dated August 24, 2009,

Judge Vanaskie granted the motion to the extent that a request was submitted to the

Pro Bono Chair of the Federal Bar Association to attempt to secure counsel for

Plaintiff.  (Doc. 36.)  After updating the Court in letter dated December 16, 2009 that

efforts to secure counsel were ongoing (*see* Doc. 38), by letter dated February 9, 2010,

the Pro Bono Chair informed the Court that the efforts to secure counsel for Plaintiff

were unsuccessful.  (Doc. 40.)  Consequently, by Order of the same date, the Court set

a telephonic scheduling conference for March 8, 2010.  (Doc. 41.)  During that

conference, trial was set for June 21, 2010.  (Doc. 43.)

On June 4, 2010, following Judge Vanaskie's elevation  to the Third Circuit

Court of Appeals, this case was verbally reassigned to this Member of the Court. Due to a scheduling conflict, by Order dated June 15, 2010, the trial was re-scheduled to August 3, 2010, and a pre-trial conference was set for July 9, 2010. (Doc. 49.) Thereafter, both parties filed pre-trial memoranda. (Docs. 50, 54.) Following review of those memoranda in preparation for the pre-trial conference scheduled on July 9, 2010, we issued an Order on July 8, 2010 canceling all pre-trial deadlines and directing Defendants within fourteen (14) days to file a renewed motion for summary judgment and supporting brief setting forth the arguments in their pre-trial memorandum. (Doc. 60.) On July 16, 2010, Defendants complied with the Order by filing the Motion for Summary Judgment that presently is before the Court (Doc. 62), along with a supporting brief (Doc. 63), an Appendix (Doc. 64), and a Statement of Facts (Doc. 65.)

On July 29, 2010, a letter from Plaintiff was docketed in which he stated that Defendants had failed to comply with our Order directing them to file a Motion for Summary Judgment. (Doc. 68.) Because it appeared that Plaintiff had not been served with Defendants' Motion as a result of his transfer between institutions, by Order dated August 2, 2010, we directed Defendants to re-serve their Motion and accompanying materials on Plaintiff at SCI Greene, where he then was confined.

(Doc. 69.)  Our Order also specifically directed Plaintiff to file his opposition,

including an opposing brief as required by Middle District of Pennsylvania Local Rule

("LR") 7.6, and a separate concise statement of material facts responding to the

numbered paragraphs of Defendants' statement, as required by LR 56.1, to

Defendants' Motion on or before August 25, 2010.  (*Id.*)

On August 23, 2010, Plaintiff filed an opposition brief (Doc. 74) and a

document entitled "Plaintiff's Concise Statement of Material Facts" (Doc. 75).  On

August 30, 2010, Defendants filed a reply brief (Doc. 78) and a supplemental

appendix[1] (Doc. 77).  Accordingly, the Motion is fully briefed and ripe for review.

In addition, on August 3, 2010, Plaintiff filed a Motion for Leave to File an

Amended Complaint.  (Doc. 72.)  We will consider Defendants' Motion for Summary

Judgment before turning to a discussion of Plaintiff's Motion.

---

[1]Defendants' supplemental appendix consists solely of the executed declaration of Defendant
Reginald Brown.  (*See* Doc. 77.)  In the reply brief filed on behalf of Defendants, counsel explained
that, due to time constraints in timely securing an executed declaration, an unexecuted declaration
(Doc. 164 at 189-191) had been submitted with the Motion for Summary Judgment.  (*See* Doc. 78 at
2 n.2.)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.   STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings

and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).  However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.  *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48.

## II.  DISCUSSION

### A.  Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.[2] *Woodford v. Ngo,* 548 U.S. 81, 92 (2006).

---

[2]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to (continued...)

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter,* 534 U.S. at 525)). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Gallego v. United States,* Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

**B.    Undisputed Facts**

---

[2](...continued)
allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The requirements for filing and opposing a motion for summary judgment in this Court are set forth as follows in LR 56.1:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, **responding to the numbered paragraphs set forth in the [moving party's] statement,** as to which it is contended there is a genuine issue to be tried.
>
> Statements of material fact in support of, or in opposition to a motion, **shall include references to the parts of the record** that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be **deemed to be admitted** unless controverted by the statement required to be served by the opposing party.

LR 56.1 (emphasis added). Defendants filed a Statement of Material Facts as required by LR 56.1. (Doc. 65.) Our August 2, 2010 Order specifically directed Ingram to file his opposition to Defendants' Motion in accordance with LR 56.1.[3] (*See* Doc. 69.) Although Ingram filed a separate statement of material facts (Doc. 75), his statements do not correspond to the numbered paragraphs set forth in Defendants' Statement. In addition, Ingram fails to cite to the parts of the record that support his statements, and instead he either cites to his Amended Complaint, or fails to provide any references to

---

[3]In addition to being reminded of the requirements of LR 56.1 in our August 2, 2010 Order, Ingram was provided with a copy of LR 56.1 along with the Standing Practice Order issued at the outset of this action (*see* Doc. 5).

the record to support his statements. (*See* Doc. 75.) Because a party responding to a

motion for summary judgment may not rest on the allegations of his complaint, but

rather must point to specific facts showing there is a genuine issue for trial, *see Jones,*

*supra,* 214 F.3d at 407, Ingram's citations to the Complaint to support his statements

are insufficient to controvert Defendants' facts. Because Ingram has failed to

controvert the statements of fact submitted by Defendants, all material facts set forth in

Defendants' Statement (Doc. 65) will be deemed admitted. *See* LR 56.1.

Defendants' Statement (Doc. 65) and supporting exhibits (Doc. 64)[4] establish the

following undisputed facts material to the instant Motion:

Plaintiff was at all relevant times an inmate incarcerated at SCI Camp Hill.

(Doc. 65, Dfts.' Statement of Material Facts ("SMF"), ¶ 1.) Defendants are present or

former employees of the Pennsylvania DOC. (*Id.*)

---

[4]In support of the instant Motion, Defendants have submitted the following Exhibits: **Ex. A:** Pennsylvania DOC Policy DC-ADM 801 (Doc. 64 at 7-53); **Ex. B:** the Declaration of John Andrade, a Hearing Examiner Supervisor and employee of the PA DOC Office of Chief Counsel and its Office of Chief Hearing Examiner (Doc. 64 at 57-59); **Ex. C:** DOC Records of Plaintiff's Misconducts (Doc. 64 at 63-77); **Ex. D:** PA DOC Policy DC-ADM 804 (Doc. 64 at 81-111); **Ex. E:** the Declaration of Defendant Ian Taggart (Doc. 64 at 115-127); **Ex. F:** the Declaration of Michael Bell, an Administrative Officer in the Secretary's Office of Inmate Grievances and Appeals (Doc. 64 at 131-137); **Ex. G:** DOC Records of Plaintiff's Grievances (Doc. 64 at 141-185); **Ex. H:** the Declaration of Defendant Reginald Brown (Doc. 64 at 189-191); **Ex. I:** DOC Records for Plaintiff, including a report of transfers between institutions, a daily log for 8/17/07- 9/18/07, and Notices of PRC Determinations (Doc. 64 at 195-217); **Ex. J:** a copy of the Docket and Entries for *Ingram v. Hamovitch, et al.*, Civil No. 3:07-CV-1383-TIV-JAS (Doc. 64 at 221-263); **Ex. K:** a copy of the Docket and Entries for *Ingram v. Heider, et al.*, Civil No. 3:06-CV-2021-TIV (Doc. 64 at 267-299); and **Ex. L:** copies of Plaintiff's DOC Medical Records (Doc. 64 at 303-331).

Remaining in this action are three (3) claims involving five (5) defendants. (*Id.* ¶ 2.) The remaining claims are a retaliation claim against Defendant Brown for issuing a misconduct; an access to the court claim against Defendants Chiles, Chambers and Taggart for the dismissal of his civil action; and a cruel and unusual punishment claim against Defendant Law for alleged forced medication. (*Id.*)

1. **Facts Regarding Retaliation Claim Stemming from 8/17/07 Misconduct**

Defendant Brown issued a misconduct against Ingram on August 17, 2007. (*Id.* ¶ 3; Doc. 64, Dfts. Exs., at 63, Misconduct A833128.) The misconduct, which charges Ingram with refusing to obey an order and threatening an employee or their family with bodily harm, was issued due to Ingram's refusal, despite several orders, to lock up and subsequent verbal threats by Ingram to Brown. (Doc. 65 ¶ 3; Doc. 64 at 63.) Ingram contends that the misconduct was issued in retaliation for his stated intention to file a grievance. (Doc. 65 ¶ 4.)

2. **Facts Regarding Access to the Courts Claim**

Ingram had two (2) other civil actions pending during the relevant time period. In the first civil action, which was initiated by Ingram on July 30, 2007 against Nurse Hamovitch, he claimed that he was forced to take medication. (*Id.* ¶ 5 (citing *Ingram*

*v. Hamovitch*, Civil No. 3:07-CV-1383-TIV-JAS, Doc. 64 at 221-263[5] (Docket Entries).) On September 6, 2007, the action was dismissed without prejudice as a result of Ingram's failure to comply with the Court's Administrative Order directing him either to pay the required filing fee or submit an application to proceed *in forma pauperis*. (*Id.*) The second civil action pending during this same time period was *Ingram v. Heider*, Civil No. 3:06-CV-2021-TIV. (*Id.* ¶ 7 (citing Doc. 64 at 267-299 (Docket Entries & Correspondence).)

On August 17, 2007, Ingram was placed in the RHU. (*Id.* ¶ 8.) He received his legal property on August 22, 2007. (*Id.*) Ingram also received his legal mail during this time period. (*Id.*) On August 31, 2007, he was transferred to the Luzerne County Prison, and returned to SCI Camp Hill on September 11, 2007. (*Id.*) Ingram was able to mail and file documents with the federal court during this time period. (*Id.* (citing Doc. 64 at 141-185, Grievance Documents; Doc. 64 at 195-217, Inmate Records; Doc. 64 at 221-263, Docket and Entries for Civil No. 3:07-CV-1383-TIV-JAS; Doc. 64 at 267-299, Docket and Entries for Civil No. 3:06-CV-2021-TIV).) Ingram contends that he was denied access to the court because Defendants failed to provide him with the materials necessary to timely file an application to proceed *in forma pauperis*. (*Id.* ¶ 9

---

[5]For the sake of uniformity, citations to page numbers throughout this Memorandum refer to the page numbers generated by the CM/ECF System.

(citing Doc. 9, Amended Complaint).)

### 3. Facts Regarding Deliberate Indifference Claim

Ingram arrived at SCI Camp Hill on June 26, 2007. (*Id.* ¶ 10.) He was prescribed vitamin B6 and INH for tuberculosis on July 10, 2007. (*Id.*) He filed a grievance on August 26, 2007 stating that he did not want or need the medication. (*Id.*) He was transferred to SCI Greene on September 19, 2007. (*Id.*) On September 20, 2007, Defendant Law issued a response to Ingram's grievance agreeing that he did not have to take the medication even though it was deemed necessary and had been prescribed for him. (*Id.* (citing Doc. 64 at 195-217, Inmate Records; Doc. 64 at 141-185, Grievance Documents; Doc 64 at 303-331, Medical Records).) Law's response also explained that Ingram had the option of signing a refusal form if he did not wish to take the medication. (*Id.*) Ingram contends that Defendant Law failed to take action to stop the alleged forced medication. (*Id.* (citing Doc. 9, Amended Complaint).)

### 4. Facts Regarding PA DOC Grievance and Administrative Remedy Procedures

The Pennsylvania DOC has three (3) different grievance or administrative remedy processes which collectively provide an inmate a forum to challenge every aspect of confinement. (*Id.* ¶ 12 (citing Doc. 64 at 115, Taggart Decl., ¶ 2).) Those policies are as follows: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Inmate

Grievance Policy, DC-ADM 804; and (3) the Administrative Custody Policy, DC-ADM 802. (*Id.* ¶ 13 (citing Doc. 64 at 7-53, PA DOC Policy DC-ADM 801; Doc. 64 at 81-111, PA DOC Policy DC-ADM 804).) The three (3) programs each are designed to address specific issues which may arise within the prison. (*Id.* ¶ 14.) One administrative remedy may not be substituted for another. (*Id.*) Each policy clearly spells out any mandates, or exceptions, with respect to issues that must be addressed, or conversely, excluded from consideration, under the policy. (*Id.*)

Inmates challenging their initial or continued confinement in any one of the DOC's level 5 housing units (i.e., RHU, Special Management Unit ("SMU"), or Long Term Segregation Unit), are required to challenge their placement either through DC-ADM 801 or DC-ADM 802, depending upon whether their placement is a form of Administrative Custody ("AC") or Disciplinary Custody ("DC"). (*Id.* ¶ 15) Inmates are not permitted to challenge their AC or DC placement through DC-ADM 804, the Inmate Grievance Policy. (*Id.* ¶ 16.) That prohibition derives from the fact that the level 5 housing units are the most secure and controlled areas within the institution, designed to house inmates posing problematic safety and security concerns, and requiring their segregation from general population. (*Id.*) Decisions related to the management of these units are primarily committed to the Program Review Committee

18

("PRC"), which consists of the prison officials most familiar with these inmates and the unit. (*Id.*)

An RHU inmate's challenge to his initial or continued confinement in AC is only properly exhausted for purposes of the PLRA when the inmate complies with the administrative remedy process set forth in DC-ADM 802, rather than DC-ADM 804. (*Id.*) However, RHU inmates are ***not*** precluded from filing grievances pursuant to DC-ADM 804 relating to issues impacting their quality of life other than the reasons for their confinement in the RHU. (*Id.* ¶ 17.)

Within the DC-ADM 804, the PA DOC established a three (3) step Inmate Grievance system to provide inmates with an avenue to resolve specific problems. (*Id.* ¶ 18.) Pursuant to DC-ADM 804, which, in its relevant form, took effect on January 3, 2005, all inmates under the jurisdiction of the DOC shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. (*Id.* ¶ 19; Doc. 64 at 81-111, DC-ADM 804.)

An inmate may seek initial review by filing a grievance within fifteen (15) working days after the events upon which the claims are based. (*Id.*) After receipt of the initial review decision, an inmate may file an appeal from that decision to the

facility manager within ten (10) working days of the date of the decision. (*Id.* ¶ 20.)

After receipt of the facility manager's decision, an inmate may file a final appeal of

that decision to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA")

within fifteen (15) working days. (*Id.* ¶ 21.)

If a grievance is determined to be improperly submitted, it is assigned a

grievance number and returned to the inmate unprocessed. (*Id.* ¶ 22.) A rejected

grievance, if resubmitted, must be resubmitted under the same grievance number

within five (5) working days. (*Id.* ¶ 23.) An appeal to final review cannot be

completed unless an inmate complies with all established procedures. (*Id.* ¶ 24.)

PA-DCM 801 provides an administrative procedure to operate a disciplinary

process that provides clear notice of prohibited behavior, outlines a fundamentally fair

hearing process, and establishes consistent sanctions for violations of Department rules

and regulations. (*Id.* ¶ 25; Doc. 64 at 7-53, DC-ADM 801.) DC-ADM 801 provides a

process for resolution of alleged inmate violations. (*Id.* ¶ 26.) If a violation is

determined to need formal resolution, the initial misconduct is heard by a hearing

examiner. (*Id.*)

Within seven (7) days of conducting a hearing, a hearing examiner is required to

determine whether the inmate is guilty of the misconduct charge based on the

preponderance of the evidence that the inmate committed the misconduct. (Doc. 64 at 27, DC-ADM 801, § I.) After the hearing has concluded, the hearing record is forwarded to the Facility Manager/designee for review to ensure that the hearing was conducted in accordance with procedures and that the action taken conformed to facility regulations. (*Id.* at 33 § K.)

Where an inmate is found guilty of misconduct charges, a three (3) step appeal process is available. (Doc. 65, Dfts.' SMF, ¶ 27.) First, an inmate may appeal from the hearing examiner's decision to the PRC within fifteen (15) working days of the hearing. (*Id.*) Next, within seven (7) days from the date of the PRC's decision, an inmate may file an appeal from that decision to the Superintendent. (*Id.*) Finally, within seven (7) days from the date of the Superintendent's decision, an inmate may appeal that decision to the Chief Hearing Examiner. (*Id.*)

### 5. Facts Regarding Plaintiff's Grievances from 6/26/07-10/31/07

Ian Taggart previously was employed as the Assistant to the Superintendent at SCI Camp Hill. (*Id.* ¶ 28.) In that capacity, he was responsible for reviewing, tracking, and referring all grievances filed at that institution to an appropriate grievance officer. (*Id.*) He also has access to and can review inmate files and the tracking system for misconduct information. (*Id.*) Taggart has submitted a Declaration verifying that

he has reviewed the grievance records for those grievances filed by Plaintiff during the time period from June 26, 2007 through October 31, 2007, and has determined that Plaintiff filed ten (10) grievances during that time period.  (*Id.* ¶ 30; Doc. 64 at 123, Taggart Decl., ¶ 20.)

Taggart also has declared that, upon review of these records, he has determined that none of these ten (10) grievances were appealed by Ingram to the final stage of review, which is the final appeal to the SOIGA.  (Doc. 64 at 123-127 ¶¶ 20-30.)

The DOC employs Michael Bell as an Administrative Officer 2 in the SOIGA. (Doc. 65 ¶ 41.)  Bell, who is a records custodian for all grievances submitted to the SOIGA, has submitted a Declaration stating that he reviewed the grievance appeal records for the grievances filed by Ingram during the time period from June 26, 2007 through October 31, 2007, and he also has determined that Ingram did not appeal any grievance to the final stage, which is the final appeal to the SOIGA.  (Doc. 64 at 131-137, Bell Decl., ¶ 9.)

The details as to the ten (10) grievances filed by Ingram from June 26, 2007 through October 31, 2007 are as follows:

Grievance No. 198034, dated August 20, 2007, was filed on August 23, 2007. (Doc. 65, Dfts. SMF, ¶ 31; Doc. 64 at 145, Grievance No. 198034.)  In this grievance,

Ingram complained that, despite his requests, he was not being given his legal and religious materials that he is entitled to have in his possession in the RHU. (*Id.*) On August 30, 2007, Defendant Unit Manager Chambers provided a response indicating that Ingram had received his property on August 22, 2007 per his request. (Doc. 65 ¶ 31; Doc. 64 at 147, 8/30/07 Response.) The grievance was deemed resolved. (*Id.*) Ingram did not file an appeal. (*Id.*; Doc. 64 at 123, Taggart Decl., ¶ 21; Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 198205, dated August 21, 2007, was filed on August 24, 2007. (*Id.* ¶ 32; Doc. 64 at 149, Grievance No. 198205.) In this grievance, Ingram explains that he is grieving the fact that Defendant Correctional Officer Brown filed a misconduct report against him on August 17, 2007 in retaliation for Ingram having informed Brown that he was going to submit a grievance form. (Doc. 64 at 149.) He also states that he wants to file a grievance against a correctional officer who denied him access to the commissary for no reason. (*Id.*) On August 24, 2007, Defendant Grievance Coordinator Taggart provided a response explaining that the grievance was being returned as improperly submitted because grievances relating to inmate disciplinary issues are to be submitted under the procedures set forth in DC-ADM 801, and also because grievances based upon separate events must be presented separately.

(Doc. 64 at 151, 8/24/07 Response.)  Ingram did not file an appeal.  (Doc. 65 ¶ 32;
Doc. 64 at 123, 125, Taggart Decl., ¶ 22;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 198547, dated August 26, 2007, was filed on August 28, 2007.
(Doc. 65 ¶ 33; Doc. 64 at 153, Grievance No. 198547.)  In the grievance, Ingram
complains that the medical department was requiring him to take medication that he
does not want or need on the basis that he was required by state law to take it, but he
disputed that such a law exists.  (Doc. 64 at 153.)  After a ten (10) day extension was
granted to provide a response to the grievance (*see* Doc. 64 at 155), on September 20,
2007, Defendant Medical Administrator Teresa Law provided a response explaining
that Plaintiff is not required to take the medication, but that his desire not to take a
medication does not indicate that the medication is not necessary or result in the
cancellation of the prescription.  (Doc. 64 at 157, 9/20/07 Response.)  Law further
explained that when an inmate refuses medication, a Medical Refusal form is
completed and signed by an inmate indicating that he understands the potential adverse
consequences to his health as a result of his refusal of medication.  (*Id.*)  Ingram did
not file an appeal.  (Doc. 65 ¶ 33; Doc. 64 at 125, Taggart Decl., ¶ 23;  Doc. 64 at 135,
Bell Decl., ¶ 9.)

Grievance No. 198550, dated August 27, 2007, was filed on August 28, 2007.

(Doc. 65 ¶ 34; Doc. 64 at 159, Grievance No. 198550.)  In this grievance, Plaintiff again complained about the issuance of a misconduct report against him on August 17, 2007 by Defendant Brown.  (Doc. 64 at 159.)  On August 28, 2007, Defendant Taggart again issued a response to Plaintiff explaining that the grievance was being returned as improperly submitted because grievances relating to inmate disciplinary issues are to be submitted under the procedures set forth in DC-ADM 801.  (*Id.* at 161, 8/28/07 Response.)  Ingram did not file an appeal.  (Doc. 65 ¶ 34; Doc. 64 at 125, Taggart Decl., ¶ 24;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 198698, dated August 28, 2007, was filed on August 29, 2007. (Doc. 65 ¶ 35; Doc. 64 at 163, Grievance No. 198698.)  In this grievance, Ingram complained that a correctional officer "blatantly refused" to take his mail on August 27, 2007.  (Doc. 64 at 163.)  On September 5, 2007, a response was issued dismissing the grievance as frivolous and suggesting that, in future, Plaintiff refer to the RHU block rules or speak to an RHU staff member if he had a question regarding operating procedures such as mail pick up.  (Doc. 64 at 165, 9/5/07 Response.)  Ingram did not file an appeal.  (Doc. 65 ¶ 35; Doc. 64 at 125, Taggart Decl., ¶ 25;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 199016, dated August 29, 2007, was filed on September 4, 2007.

(Doc. 65 ¶ 36; Doc. 64 at 167, Grievance No. 199016.)  In this grievance, for a third time, Ingram voiced his complaint about the issuance of a misconduct report against him on August 17 by Defendant Brown.[6]  (Doc. 64 at 167.)  On September 4, 2007, Defendant Taggart again issued a response to Plaintiff explaining that the grievance was being returned as improperly submitted because grievances relating to inmate disciplinary issues are to be submitted under the procedures set forth in DC-ADM 801. (*Id.* at 169, 9/4/07 Response.)  Ingram did not file an appeal.  (Doc. 65 ¶ 36; Doc. 64 at 125, Taggart Decl., ¶ 26;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 200450, dated September 13, 2007, was filed on September 14, 2007.  (Doc. 65 ¶ 37; Doc. 64 at 171, Grievance No. 200450.)  In this grievance, Ingram complained that Defendant Chambers' response to his first grievance (Grievance No. 198034) contained "false information" and he stated, "I would appreciate it if he is stopped from handling my grievances."  (Doc. 64 at 171.)  On September 27, 2007, a response was issued by Rick Southers, Major of Unit Management, denying Ingram's grievance as frivolous.  (Doc. 64 at 173, 9/27/07

---

[6]In this grievance, Ingram states that he had received the "D.O.C. written response in denial of my appeal." (*See* Doc. 64 at 167.) It appears that Ingram was referring to the denial of his appeal from his misconduct by the PRC on August 28, 2007. (*See* Doc. 64 at 71, PRC Action.) Ingram properly appealed the PRC's decision through the procedures set forth in DC-ADM 801 by filing an appeal to the Superintendent on August 29, 2007. (*See* Doc. 64 at 73, 75.)

Response.)  The Response indicated that Chambers had provided proof that what he reported in his response to the first grievance was factual.  (*Id.*)  The Response also stated that it was apparent that Ingram had not attempted to resolve his issue before filing a grievance, and therefore Ingram clearly was misusing the grievance system. (*Id.*)  Ingram did not file an appeal.  (Doc. 65 ¶ 37; Doc. 64 at 127, Taggart Decl., ¶ 27;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 203813, dated October 11, 2007, was filed on October 16, 2007. (Doc. 65 ¶ 38; Doc. 64 at 175, Grievance No. 203813.)  In this grievance, which was filed after Ingram's transfer to SCI Greene on September 19, 2007, Ingram complained that he mistakenly was being informed that he had exceeded his time allowance for use of the telephone.  (Doc. 64 at 175.)  In a response dated October 16, 2007, Superintendent Assistant Dan Davis informed Ingram that no mistake had been made because telephone records verified that Ingram had indeed exceeded his telephone usage limit.  (Doc. 64 at 177, 10/16/07 Response.)  Ingram did not file an appeal. (Doc. 65 ¶ 38; Doc. 64 at 127, Taggart Decl., 28;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 203814[7], dated October 15, 2007, was filed on October 16, 2007.

---

[7]In their Statement of Material Facts, Defendants refer to Grievance No. 200814; however, it is clear from the copy of the grievance that the correct identification is Grievance No. 203814.  (*See* Doc. 64 at 179.)

(Doc. 65 ¶ 39; Doc. 64 at 179, Grievance No. 203814.)  In this grievance, Ingram complained that his legal mail was improperly opened outside of his presence.  (Doc. 64 at 179.)  In a response dated October 17, 2007, Business Manager Jean W. Scott denied the grievance and explained that the mail Ingram was referring to was not properly identified as legal mail, and therefore, the fact that it was opened outside of his presence did not violate DC-ADM 803, which sets forth procedures for the handling of inmate mail.  (*Id.* at 181, 10/17/07 Response.)  Ingram did not file an appeal.  (Doc. 65 ¶ 39; Doc. 64 at 127, Taggart Decl., ¶ 29;  Doc. 64 at 135, Bell Decl., ¶ 9.)

Grievance No. 205693, dated October 30, 2007, was filed on October 31, 2007.  (Doc. 65 ¶ 40; Doc. 64 at 183, Grievance No. 205693.)  In this grievance, Ingram reiterated his complaint previously set forth in Grievance No. 198547 that he was being forced to take medication that he did not want or need.  (Doc. 64 at 183.)  Ingram also requested a chest x-ray.  (*Id.*)  On October 31, 2007, Superintendent Assistant Dan Davis issued a response rejecting the grievance because grievances based upon different events must be presented separately, and because the grievance was not submitted within fifteen (15) working days after the events upon which it was based, as required by DC-ADM 804.  (Doc. 64 at 185, 10/31/07 Response; Doc. 64 at 81-111,

DC-ADM 804.)  Ingram did not file an appeal.  (Doc. 65 ¶ 40; Doc. 64 at 127, Taggart

Decl., ¶ 30;  Doc. 64 at 135, Bell Decl., ¶ 9.)

### 6.     Facts Regarding 8/17/07 Misconduct Report

John Andrade is the Hearing Examiner Supervisor and an employee of the PA

DOC Office of Chief Counsel and its Office of Chief Hearing Examiner.  (Doc. 65 43.)

Andrade has submitted a Declaration in which he verifies that he has researched and

reviewed, through the Office of Chief Hearing Examiner files and PA DOC records,

the misconduct records involving Plaintiff, and specifically the records pertaining to

Misconduct A833128, which was issued to Plaintiff on August 17, 2007, to determine

if Plaintiff properly appealed this misconduct to final review.  (Doc. 64 at 57-59,

Andrade Decl.; Doc. 64 at 63, Misconduct A833128.)

Andrade declares that Plaintiff did not appeal this misconduct to final review.

(*Id.* at 57 ¶ 2.)  Specifically, Andrade indicates that, after the issuance of the

misconduct on August 17, 2007, a hearing was held on August 20, 2007, after which

Ingram was found guilty of one of the charges, namely refusing an order.  (*Id.* ¶ 3;

Doc. 64 at 67, Disciplinary Hearing Report.)  On August 20, 2007, Ingram filed an

appeal to the PRC, which was received on August 24, 2007. (Doc. 64 at 59 ¶ 3; Doc.

64 at 69, Misconduct Hearing Appeal.)  The guilty finding was upheld by the PRC on

29

August 28, 2007.  (Doc. 64 at 59 ¶ 3; Doc. 64 at 71, PRC Action.)  On August 29,

2007, Ingram filed an appeal to the Superintendent, which was received on September

4, 2007.  (Doc. 64 at 59 ¶ 3; Doc. 64 at 73, 75, Appeal to Superintendent.)  The PRC

finding was upheld by the Superintendent on September 4, 2007.  (Doc. 64 at 59 ¶ 3;

Doc. 64 at 77, PA DOC Records of Misconducts for Plaintiff.)  As verified by

Andrade, Ingram did not appeal the Superintendent's decision to the Office of Chief

Hearing Examiner, the final stage of appeal.  (Doc. 64 at 58-59 ¶¶ 2-3; Doc. 64 at 77.)

### C.     Analysis

Defendants have demonstrated that Ingram failed to exhaust his administrative

remedies as to any of his remaining claims in this action.  Specifically, on the record

before the Court developed through the instant Motion, Defendants have established

that Plaintiff failed to exhaust his administrative remedies under DC-ADM 801 as to

his retaliation claim against Brown.  Although Plaintiff filed an appeal to the PRC from

the Disciplinary Hearing Report finding him guilty of refusing to obey an order (*see*

Doc. 64 at 69), and an appeal from the PRC's decision to the Superintendent (*see id.* at

73, 75), he failed to file an appeal to the Office of Chief Hearing Examiner, the final

required step to exhaust his administrative remedies under DC-ADM 801 (*see* Doc. 64

at 58-59 ¶¶ 2-3; Doc. 64 at 77.)  In opposing the instant Motion, Plaintiff has failed to

submit any evidence to dispute that he failed to exhaust his administrative remedies with respect to his retaliation claim against Brown.

On the record presently before the Court, Defendants also have established that Plaintiff failed to exhaust his administrative remedies under the procedures provided through DC-ADM 804 as to his access to the courts claim against Defendants Chiles, Chambers, and Taggart. Plaintiff has failed to submit any evidence to refute that Defendant Chambers responded to Grievance No. 198034, filed on August 23, 2007, in which Plaintiff complained about not being given access to his legal and religious materials during his confinement in the RHU, by observing that Plaintiff had in fact received his property pursuant to his request. (*See* Doc. 64 at 145, Grievance No. 198034; Doc. 64 at 147, 8/30/07 Response.) Significantly, Plaintiff also has not disputed that he did not file an appeal from Chambers' response to his grievance. (*See* Doc. 65 ¶ 31; Doc. 64 at 123, Taggart Decl., ¶ 21; Doc. 64 at 135, Bell Decl.,¶ 9.) In addition, Plaintiff has not submitted any evidence to controvert the record showing that he did not file an appeal from the denial of his grievance filed at Grievance No. 200450 in which he complained about Defendant Chambers' response to Grievance No. 198034. (*See* Doc. 65 ¶ 37; Doc. 64 at 127, Taggart Decl., ¶ 27; Doc. 64 at 135, Bell Decl., ¶ 9.)

Finally, on the record developed through the instant Motion, Defendants have met their burden of establishing that Plaintiff failed to exhaust his administrative remedies under the procedures provided through DC-ADM 804 as to his deliberate indifference claim against Defendant Law. It is undisputed that the grievance at issue is Grievance No. 198547, dated August 26, 2007, and filed on August 28, 2007. (*See* Doc. 65 ¶ 33; Doc. 64 at 153, Grievance No. 198547.) In this grievance, Ingram complains that the Medical Department was requiring him to take medication that he did not want or need on the basis that he was required by state law to take it, but he disputed that such a law exists. (Doc. 64 at 153.) Plaintiff has failed to present any evidence on the instant record that, after an extension of time was granted to respond to his grievance, on September 20, 2007, Defendant Law provided a response explaining that Plaintiff is not required to take the medication, but that his desire not to take a medication does not indicate that the medication is not necessary or result in the cancellation of the prescription. (Doc. 64 at 157, 9/20/07 Response.) Plaintiff also has failed to refute that, as explained by Law in her response, if he chose to exercise his option to refuse medication, he could do so and would simply need to participate in the completion of a Medical Refusal Form indicating that he understands the potential adverse consequences to his health as a result of his refusal of medication. (*Id.*)

32

Ingram also has failed to present any evidence to show that there is a genuine issue of material fact as to his failure to file an appeal after Law provided her response. (*See* Doc. 65 ¶ 33; Doc. 64 at 125, Taggart Decl., ¶ 23; Doc. 64 at 135, Bell Decl., ¶ 9.)

In his brief in opposition to the instant Motion for Summary Judgment, Ingram argues that Defendants cannot be granted judgment as a matter of law on the basis of his failure to exhaust administrative remedies because the Court previously made a finding on this issue. (*See* Doc. 74, Opposition Brief, at 7.) Specifically, Ingram claims that, in his April 17, 2009 Report and Recommendation recommending the denial of the previous motion for summary judgment filed on behalf of Defendants, Magistrate Judge Smyser found that each of the Defendants had failed to present evidence to establish that Plaintiff failed to exhaust his administrative remedies. (*See id.*) Ingram then observes that Judge Vanaskie adopted the Report and Recommendation, and in doing so, noted the failure of Defendants to object to the Recommendation. (*See id.* at 7-8.) In addition, Ingram notes that Judge Vanaskie denied a verbal request made by counsel for Defendants during a telephonic scheduling conference on March 10, 2010 to file a renewed motion for summary judgment. (*See id.* at 8.)

In arguing that this Court is bound by the finding made on the record developed

in a previous motion for summary judgment that Defendants failed to meet their

burden to show that Plaintiff failed to exhaust his administrative remedies, Ingram

appears to be invoking the law of the case doctrine. The Third Circuit recently

summarized this doctrine as follows:

> The 'law of the case . . . doctrine posits that when a court decides upon a
> rule of law, that decision should continue to govern the same issues in
> subsequent stages in the same case.' *Arizona v. California,* 460 U.S. 605,
> 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The 'doctrine does not
> restrict a court's power but rather governs its exercise of discretion.' *Pub.*
> *Interest Research Group of N.J., Inc. v. Magnesium Elektron,* 123 F.3d
> 111, 116 (3d Cir. 1997) (citations omitted). 'A court has the power to
> revisit prior decisions of its own or of a coordinate court in any
> circumstance, although as a rule courts should be loathe to do so in the
> absence of extraordinary circumstances such as where the initial decision
> was clearly erroneous and would make a manifest injustice.' *Christianson*
> *v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100
> L.Ed. 2d 811 (1988) (citing *Arizona,* 460 U.S. at 618 n. 8, 103 S.Ct.
> 1382).

*Feesers, Inc. v. Michael Foods, Inc.,* 591 F.3d 191, 207 (3d Cir. 2010). In denying

Defendants' previous motion for summary judgment, the Court was not deciding on a

rule of law. Rather, the Court determined that, on the record before it at that time,

Defendants had not met their burden of showing that there was no genuine issue of

material fact as to whether Plaintiff exhausted his administrative remedies.

Importantly, in disposing of that motion, the Court did not make a finding that Plaintiff

fully exhausted the administrative remedies that were available to him; rather, it only

34

decided that Defendants had not proven that Plaintiff had failed to properly exhaust. Therefore, when Defendants submitted a pretrial memorandum in preparation for the July 9, 2010 Pretrial Conference in which they advanced potentially meritorious arguments concerning both Plaintiff's failure to exhaust his claims and the claims themselves (*see* Doc. 54), there was no previous finding of law in this case that precluded this Court's determination that it was in the interest of judicial economy to allow Defendants to submit their arguments in a renewed motion for summary judgment before we conducted any further proceedings in this case.

Ingram also points out that a verbal request by counsel for Defendants during a March 8, 2010 telephonic scheduling conference to re-open the dispositive motion deadline was denied. (*See* Doc. 74 at 8.) To the extent that Plaintiff argues that, but for the opportunity Defendants have been given to submit the instant Motion for Summary Judgment, they would have been precluded from making any further attempt to prove that Plaintiff failed to exhaust his administrative remedies, the Third Circuit has denied to read a strict timing requirement into the PLRA for the prosecution of the affirmative defense of failure to exhaust. *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010). Therefore, Defendants still would have been permitted to submit the evidence that they have advanced in connection with the instant Motion at trial, and the

burden still would have shifted to Plaintiff to refute it.

Because Ingram has failed to dispute the facts and evidence submitted by Defendants showing that he failed to exhaust his administrative remedies with regard to any of his claims, Defendants are entitled to judgment as a matter of law. However, we observe that, even if Plaintiff had exhausted his administrative remedies, for the reasons that follow, he has failed to submit any evidence showing that there is a genuine issue for trial as to any of his claims.

Ingram's claim that Defendant Brown filed the August 17, 2007 Misconduct Report against him out of retaliation would fail on the merits. In order to state a retaliation claim, a plaintiff must satisfy three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, an inmate plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 228 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id.* (quoting *Allah*, 229 F.3d at 225). Third, a prisoner plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* (quoting *Mount*

*Healthy Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *Suppan v. Dadonna*, 203 F.3d 228. 235 (3d Cir. 2000).

Plaintiff's retaliation claim would fail on the first element. He claims that Brown issued the misconduct because Plaintiff stated his intention to submit a grievance. Stating an intention to file a grievance is not a constitutionally protected activity. Therefore, Plaintiff cannot satisfy the first prong to state a retaliation claim.

However, even if the stating of an intention was a constitutionally protected activity, Plaintiff would not be able to show that his stating of an intention to file a grievance was a "substantial or motivating factor" in the issuance of a misconduct because he was found guilty of the charge of refusal to obey an order that was set forth in the misconduct report. The Third Circuit has held that an inmate does not state a retaliation claim based on the issuance of a misconduct where the inmate is found guilty of the charge set forth in the misconduct report. *See Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding that a prisoner violated the rules checkmates his retaliation claim)). Therefore, even if Plaintiff exhausted his administrative remedies with regard to his retaliation claim, the claim would fail on the merits.

With respect to Ingram's access to the courts claim, he has failed to submit any

evidence to refute the factual record showing that, following his placement in the RHU on August 17, 2007, he received his legal property on August 22, 2007. (*See* Doc. 65 ¶¶ 8, 31; Doc. 64 at 147, 8/30/07 Response to Grievance No. 198034.) Further, it is undisputed that Ingram received his legal mail during this time period. (*See* Doc. 65 ¶¶ 8, 31.) In addition, the undisputed factual record establishes that, even though Ingram was transferred to the Luzerne County Prison on August 31, 2007, and remained there until his return to SCI Camp Hill on September 11, 2007, he was able to mail and file documents with the federal court during that time period. (*See id.* ¶ 8.)

Moreover, to prevail on an access to the courts claim, an inmate must allege an "actual injury" to his litigation efforts; to establish actual injury, an inmate plaintiff must demonstrate that a non-frivolous legal claim was frustrated or was being impeded. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also O'Connell v. Williams*, 241 Fed. Appx. 55, 57 (3d Cir. 2007). Also, in *Christopher v. Harbury,* 536 U.S. 403 (2002), the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense that is not otherwise available in a future action. 536 U.S. at 415.

As observed by Defendants in their reply brief, to the extent that Plaintiff is arguing that his "actual injury" was the dismissal of his civil action against Hamovitch as a result of his failure to either pay the filing fee or submit a request to proceed *in forma pauperis*, Plaintiff cannot state a claim of denial of access to the courts under the three (3) factors set forth in *Christopher.* First, the undisputed factual record, and in particular the response to Grievance No. 198547, in which Plaintiff complains that he was forced to take medication, confirms that he was **not** forced to take medication, and therefore, his underlying claim is frivolous. Next, the undisputed factual record establishes that there were no official acts frustrating the litigation, but rather, Plaintiff received his legal property within one (1) week after his placement in the RHU and was able to mail and file documents with the court even when he was temporarily transferred to the Luzerne County Prison from August 31, 2007 through September 11, 2007. (*See* Doc. 65 8, 31; Doc. 64 at 147, 8/30/07 Response to Grievance No. 198034.) As to the third *Christopher* factor, the dismissal of Plaintiff's action against Hamovitch was *without prejudice.* Therefore, his claim was not lost because he either could have filed his application for leave to proceed *in forma pauperis* along with a motion requesting the re-opening of the case, or, he could have asserted his claim against Hamovitch in the instant action.

Finally, as to Plaintiff's claim against Defendant Law, as observed by Defendants, Plaintiff does not claim that Defendant Law forced him to take medication. Rather, he alleges that her deliberate indifference stems from her alleged failure to take action after the grievance in which he complained about being forced to take medication was referred to her. Notwithstanding the fact that Law could not be held personally liable merely based upon the fact that Plaintiff's grievance was referred to her, the undisputed factual record establishes that Law promptly responded to the grievance and informed Plaintiff that he was **not** required to take medication. Because it is undisputed that Plaintiff was not forced to take medication, even if Plaintiff had exhausted this claim, there would be no basis for his claim against Defendant Law, and she therefore would be entitled to judgment as a matter of law.

For the foregoing reasons, Defendants are entitled to judgment as a matter of law. We now turn to a discussion of Plaintiff's Motion for Leave to File an Amended Complaint.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

On August 3, 2010, before his opposition to Defendants' Motion for Summary Judgment was due to be filed, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Doc. 72.) In his Motion, Plaintiff states that he seeks to amend by adding

an Eighth Amendment claim against Defendant Taggart because Taggart, in his capacity as Grievance Coordinator, also was aware that Plaintiff was forced to take medication that he did not want or need and failed to take any action to prevent Plaintiff from being forced to take that medication. (*Id.* at 3 ¶¶ 7-8.) In addition, Plaintiff seeks to amend by adding a Fourteenth Amendment claim against Defendants Taggart, Law, and "the SCI Camp Hill medical care provider" on the basis that they violated his liberty interest under the Fourteenth Amendment in failing to take him off the medication. (*Id.* ¶¶ 9-10.)

In considering the instant request by Plaintiff, we are mindful of the fact that *pro se* pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

Plaintiff has not submitted a brief in support of his Motion as required by LR

7.5.  Accordingly, it is appropriate to deem Plaintiff's Motion to be withdrawn.[8] However, we observe that, even if Plaintiff had filed a brief in support of his Motion, allowing him to amend would be futile because it is apparent from the undisputed factual record developed through Defendants' Motion for Summary Judgment that Plaintiff has not exhausted his administrative remedies with respect to the Eighth and Fourteenth Amendment claims he seeks to add to this action, and therefore, he would be unable to recover on these claims.  *See Alston*, 363 F.3d at 235; *Grayson*, 293 F.3d at 108.  Moreover, amendment also would be futile because it is apparent from the undisputed factual record Plaintiff was **not** required to take medication, and thus, no factual basis exists for the Eighth and Fourteenth Amendment claims he seeks to add to this action.  (*See* Doc. 64 at 157, 9/20/07 Response to Grievance No. 198547.) Accordingly, Plaintiff's Motion for Leave to Amend will be denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 62) will be granted, and judgment will be entered in favor of Defendants.  In addition,

---

[8]LR 7.5 requires that, within fourteen (14) days of filing of any motion, the party filing the motion file a supporting brief.  The rule further provides that if a supporting brief is not filed within the required time, the motion shall be deemed withdrawn.

Plaintiff's Motion for Leave to Amend (Doc. 72) will be denied.  An appropriate Order

will enter.